### THE EMPEROR.

### THE HOWARD CARROLL.

### KNICKERBOCKER STEAM TOWAGE CO. v. THE EMPEROR and THE HOWARD CARROLL.

(District Court, S. D. New York. June 13, 1894.)

1. TUGS AND TOWS—STRANDING TOW—NEGLIGENT NAVIGATION.
     A barge having run aground while in tow of two tugs, her owner brought this suit against both tugs to recover the damage. The defense was that high water was lower than usual, and that the draught of the barge had been represented as being but 20 feet, when she in fact drew more. The evidence did not satisfactorily show any misrepresentation as to the draught of the barge, and it did appear that the barge grounded forward, where her draught was not ever 19 feet 6 inches. The chart showed sufficient channel way for the barge, even with an abatement of a foot or two in the usual height of the flood tide. Held, that the tugs did not take the best water, and that this was the true cause of the grounding, and rendered the tugs liable.

2. SAME—TWO INDEPENDENT TUGS—ONE DIRECTING NAVIGATION—LIABILITY.
     Where two independent tugs were employed to tow a barge, and during the towing the barge was run aground, held, that both tugs were liable, although it appeared that the pilot of one tug was taking the direction of the navigation in the shallow waters when the barge struck.

In Admiralty.

This was a libel by the Knickerbocker Steam Towage Company, owners of the barge Andrew Jackson, against the steam tugs Emperor and Howard Carroll, for grounding the barge while in tow of the tugs.

Wing, Shoudy & Putnam, for libelant.
Samuel Park, for the Emperor.
Hyland & Zabriskie, for the Howard Carroll.

BROWN, District Judge.    In the attempt of the tugs Emperor and Carroll to land the barge Andrew Jackson at Fourteenth street, East river, at about high tide, the barge was run aground twice, nearly abreast of Seventeenth street, while heading down; and afterwards, when allowed to drop up river with the flood tide, she again struck the bottom off Twenty-Fifth street. The defense on the part of the tugs is, that high water on that day was much below the usual mark, on account of previous northwest winds, and that the draught of the barge had been represented as being only 20 feet. The actual draught is proved to have been 19 feet 6 inches forward and 20 feet 10 inches aft.

I do not think that the defense is sufficiently made out. The evidence shows that the libelant's agent, in giving the order for the tugs to Mr. Eldridge, said in answer to an inquiry by telephone as to the draught: "Oh, I don't know,—about 20 feet;" no other representation as to the draught was made by the libelant. Eldridge prepared a brief card, such as is used in towing orders, for the purpose of finding tugs to fill the order, and his employe states that the card had on it the statement of "20 feet," as the draught. The masters of the tugs say that the same statement was made to them. The card was given to the captain of the Emperor, who undertook the direction of the navigation, as the captain of the Carroll had not before undertaken to land any deep draught barges at Fourteenth street. The card, however, was not preserved, and the witnesses as to its contents testified in their own exculpation.

In the absence of the card itself, I am not at all satisfied that the statement on the card was not "about 20 feet," instead of "20 feet." To establish so slight a difference, the card should be produced, or the secondary evidence be free from suspicious circumstances. Here, that is not the case. Mr. Eldridge, who wrote the card, has no recollection of writing the draught, or what, if anything, was stated about it. The water was known to be shallow. Mr. Eldridge would not be likely to misstate the representations made to him. The captain of the Emperor, who had possession of the card, testifies that when the barge struck the third time, he inquired of a person on board the barge if the draught was not over 20 feet, thinking that it must be greater than he understood it to be; and that he was told in reply that the draught was over "21 feet." Not only is this reply denied, but it is highly improbable; and had the card stated "20 feet" only, it seems to me very improbable also that the card would not have been retained by the captain of the Emperor for his own defense. The failure to preserve and produce the card is but one step short of the voluntary destruction of evidence. The captain of the Carroll, moreover, says that immediately after the barge struck first, he inquired the draught of the man on the barge, and was told it was over 21 feet; but that he said nothing about this to the captain of the Emperor, who had charge of the navigation. It seems to me extremely improbable that he would not have stated this to the Emperor's pilot immediately, if the previous statement of the draught had been "20 feet." rather than "about 20 feet." In the absence of the card, therefore, I do not place any reliance on the evidence of "20 feet" as an exact statement of the draught represented to the tugs, rather than "about 20 feet," as stated to Mr. Eldridge. The average draught was in fact only 20 feet 2 inches. The load-line figures forward and aft indicated exactly the draught of the barge at each end; and if the tugs did not notice and know the draught, it was by their own negligence.

It is probable from the testimony that the high tide was somewhat lower than usual that day; but without more definite evidence than that presented, no precise difference can be deemed

proved. No special observation was made, and the evidence on this point is of the loosest and least persuasive character possible. Whatever the fact was, the owners and masters of the tugs were aware of it at the time, and evidently had no doubt that a barge of at least 20 feet draught could be landed without danger. Yet the evidence shows that the barge was run aground forward, though her draft forward was not over 19 feet 6 inches, and amidships she could only have drawn 20 feet 2 inches. The chart in evidence shows sufficient channel way for the barge as she was, even with an abatement of a foot or two in the usual height of the flood tide; and the fact that she struck twice forward with only 19½ feet draught forward, satisfies me that the pilots did not take the best water, and that this was the true and only cause of the grounding.

As between the Emperor and the Carroll, although the navigation in the vicinity of Seventeenth street was directed by the master of the Emperor, I do not think that the relation of the Carroll in the matter was that of a mere helper and servant of the Emperor. Mr. Pastor, the employe of Mr. Eldridge, says that he engaged the Carroll as one of the tugs employed, two being required. The Carroll was, in fact, first on the ground, and she first commenced the towage in the absence of the Emperor. The Carroll's bill for the towage, as was stated in argument, and not denied, was rendered to the libelant, and not to the Emperor. It was natural, and perhaps even necessary, with two tugs, that the pilot of one should take the direction in shallow waters; and I do not think that the legal relation or responsibility of the Carroll to the libelant was changed by the fact that the Carroll relied upon the superior familiarity of the Emperor's pilot with the channel way near Seventeenth street, and submitted the direction of the navigation in that region to him. It was a matter of convenience, and part of the arrangement, between the tugs themselves, not designed to change any of the legal relations or responsibilities of either.

The libelant is, therefore, entitled to a decree against each tug for one-half the damage.